## WOODS v. CLAVING REALTY CORPORATION et al.

District Court, S. D. New York.
April 15, 1948.

Sylvan D. Freeman, of New York City (John F. McCracken, of New York City, of counsel), for plaintiff.

George Popkin, of New York City, for Claving Realty Corp. and Irving Friedman.

Irwin Leibowitz, of New York City, for Harold C. Samuels Corp. and Harold C. Samuels.

FORD, District Judge.

My findings of fact may be briefly stated thus: The defendant, Claving Realty Corporation, of which the defendant Irving Friedman was the president, acquired a building at 204 East Eightieth Street in New York City sometime about the middle of July, 1946, and proceeded to make it available for residential apartments to be rented.

At about that time Mr. Friedman was approached by the defendant Harold C. Samuels, who is the president of the defendant Harold C. Samuels Corporation, and Mr. Samuels secured from Mr. Friedman permission to negotiate with tenants for occupancy of those apartments, to send tenants to inspect the apartments and to offer persons to Mr. Friedman and his corporation as prospective renters. Mr. Friedman told Mr. Samuels what the rents would be for the various apartments and in general told him the terms of his rentals.

Mr. Samuels' corporation, and Mr. Samuels personally, are licensed real estate brokers in the City and State of New York.

As a result of that interview, Mr. Samuels proceeded to send various persons to inspect the apartments. He was not au-

thorized to place any agent in charge of the apartments or at the apartments. He was not authorized to close any rental contracts. When Mr. Friedman sent a tenant or a prospective tenant to inspect the apartment, and the tenant returned and reported that the apartment was satisfactory, the defendant Samuels, or other agents of his corporation, prepared a rental contract and received from the prospective tenant a check payable to the Claving Realty Corporation for the first month's rent which was in accordance with Mr. Friedman's terms of renting; and at the same time received from the tenant a check or cash, for an amount equal to the first month's rent which the Samuels corporation retained as compensation for its services.

The proposed rental contract, together with references which were required of the prospective tenant, and the check for the first month's rent, were tendered by mail or in person, to the landlord, the Claving Realty Corporation, for which Mr. Friedman was acting in the transaction. Mr. Friedman then examined the references, and upon finding them satisfactory, signed the contract, accepted the check for the first month's rent, and the tenant, who was dealing through Mr. Samuels, was notified of the date on which occupancy could be taken.

The Harold C. Samuels Corporation, through Mr. Harold C. Samuels, or any other person, never received or collected any of the subsequent rents. The whole transaction, as far as the Samuels Corporation is concerned, constituted the bringing of the tenant and the landlord together and by their efforts, closing the contract, a service usually rendered by brokers in such transactions.

There was no division between the Harold C. Samuels Corporation and the Claving Realty Corporation of the amount paid by the tenants to the Samuels Corporation, and there was no agreement for division of that payment. It was retained by the Samuels Corporation, and, in each case, it was equivalent to the first month's rent.

Those are the facts in this case as I find them and upon those facts it must be determined whether they disclose a viola-

tion of the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix, § 901 et seq., or the regulations prescribed thereunder.

The case presents the question whether the amount received by the Samuels Corporation constituted rent for this property, under the regulations which define rent. Unless the commissions paid to the Samuels Corporation constitute rent there was no overpayment of rent by the tenant. The amounts paid otherwise were the prescribed rentals fixed by the Office of Price Administration.

We must determine, therefore, whether these payments constituted rent. Ordinarily, of course, they would not constitute rent, but the term "rent" as used in these regulations is defined for the purpose of this Act. Section 13, subsection 10 provides: "'Rent' means the consideration, including any bonus, benefit or gratuity demanded or received for or in connection with the use or occupancy of housing accommodations."

Was this amount a consideration received in connection with the occupancy of those housing accommodations? I see no escape from the conclusion that a commission paid in consideration of services rendered in securing the apartments for tenants, and bringing the tenants and landlord together, in preparing the necessary papers, submitting them for consideration of the landlord, reporting to the tenants the acceptance or approval of the landlord, are, and must be considered, as payments or considerations "in connection with the use or occupancy of housing accommodations."

So I am forced to the conclusion that under the regulation that I have referred to this payment constituted rent.

Our next inquiry is whether, within the meaning of the Act and the regulations thereunder, the Samuels Corporation and Mr. Samuels are responsible as a landlord.

We again find that the ordinary term "landlord" is not limited in this Act and in these regulations to the owner of the property or to the manager of the property, or to the person who has it under his control or supervision. It includes any

other person who receives rent and any agent of such person who participates in the transaction. This payment was rent. The definition of "landlord" will include the Samuels Corporation and Mr. Samuels because they actually received rent.

With those definitions controlling, my conclusion is that there has been shown here by the evidence an evasion of the rent regulations for which all defendants are liable. The defendants cannot escape by the methods that have been used here under the regulations that have been designed, apparently, to reach that sort of evasion, and unless the regulations, which seem to be clear, are enforced, evasion by such means would be very easy. The landlord has been relieved of the burden of paying a commission to the broker whose services he accepted in procuring him tenants. The landlord in this case was obviously familiar with the fact that when he accepted those tenants he was accepting them as the result of the services rendered by the broker; that they were produced by the broker and that the tenant would be required to pay the broker's commission. I don't think any other inference can be derived from the testimony.

I recognize the fact that many tenants need a broker to find them apartments. In a great city like New York they cannot stop their work and go hunting an apartment, but nevertheless the regulations, the validity of which I have no power to question, have brought within their reach the type of transaction that has been shown here as an evasion which is prohibited.

The decision of Judge Goodrich in Bowles, Price Administrator, v. Ruppel, 3 Cir., 157 F.2d 944, 946, is in point. The facts in that case were stronger than they are in this case. In that case the broker brought the parties together, and he did more, he subsequently collected rents. It was the opinion of the Third Circuit Court of Appeals that the liability of those acting as agents in renting premises exists under the Price Control statute, although the agency may have been a form of an agency for the tenant. The opinion refers to the general rule that it is not an excuse from legal liability generally, when one has act-

ed in what he did as an agent for another, saying: "The general rule has been applied to liability of those acting as agents in renting premises, for liability under the Price Control statute, although under circumstances distinguishable from those presented here." I examined the cases cited under that statement in the footnotes. While the facts are distinguishable, the principle does not seem to be.

In my opinion the plaintiff is entitled to an injunction against all of the defendants and to an order requiring that the defendants, both the landlord and the broker, being jointly responsible, shall return to the tenants the money that was collected in violation of this Act.

I do not find in my memorandum a very clear showing as to what tenants paid their commission to the broker. However, I do find that all payments that have been shown by the evidence to have been made by the broker were, as a matter of law, rent. They were received by the broker and that constituted him, within the meaning of the Act, a landlord who is liable, not only the corporation but Mr. Samuels, who as its agent, negotiated the transactions.

It appeared from the testimony of Mr. Friedman that Grace Usher Coates was one of the tenants who rented one of the apartments, and it appears from her testimony that she paid $125 to the defendant Samuels Corporation, so the evidence clearly entitles her to be paid the $125 back.

I will adjudge the Government entitled to recover on account of her payment a total sum of $250.

It appears that Mr. Nicholas M. Rivero paid to the Samuels Corporation under the same circumstances the sum of $100. The order will direct that that be refunded to him and that the Government recover $200 damages on account thereof.

It appears that Theodore P. Kocher under the same circumstances and conditions paid to the broker, the defendant Samuels, $100. The same order will be made with reference to that payment; that is, $100 to be returned to Kocher and $200 to be recovered by the Government.

It appears from the evidence that James P. Ellis, under the same circumstances

paid the sum of $95 to the broker, the defendant, and the order will require that to be refunded to him and the Government, that is the Administrator, the plaintiff in this case, to recover twice that amount in damages.

Mr. Samuels' records show, which he produced here, that another tenant, W. Lane, who was identified by Mr. Friedman as one of his tenants, paid to Mr. Samuels' corporation the sum of $100; that a Mr. Pertzoff under the same circumstances paid to the Samuels Corporation $100; and Mr. Aranow, whose full name I do not know, but I suppose it appears in the testimony, paid the sum of $95; and a Mr. Hasler paid the sum of $100. Each of them are entitled to have the payments refunded to them and the judgment will so provide, and the Government will recover double the amount that was paid by each of them.

You may prepare, if you wish to submit them, more detailed findings. Judgment accordingly.